(No. 11640.—Reversed and remanded.)
ARTHUR M. OMER, Appellee, *vs.* WILLIAM VOLLBRACHT, Appellant.

*Opinion filed December 19, 1917.*

1. EQUITY—*when a decree setting aside partnership settlement, notes and deeds is unauthorized.* Where insanity of the complainant is made the ground for relief prayed in his bill to set aside a partnership settlement with the defendant, an agreement by the defendant to take care of the complainant and certain deeds executed by the complainant, and to compel a partnership accounting and the delivery of certain notes, the chancellor is not authorized to grant the relief on the ground that the defendant had not kept his agreement, where there is no allegation in the bill to that effect, and to render a money decree in favor of the complainant.

2. SAME—*objection that a bill is multifarious must be made in trial court.* An objection that a bill in chancery is multifarious because it combines the setting aside of a partnership settlement with the setting aside of business transactions · unconnected with the partnership must be raised in the trial court and cannot be first urged in the Supreme Court.

3. CONTRACTS—*parties competent to contract are bound by the contract in absence of fraud.* In the absence of fraud or misrepresentations parties who are competent to contract are bound by the contract entered into by them, and mere failure to comply with such a contract is not ground for setting it aside, though each party is answerable for his default in an appropriate action.

APPEAL from the Circuit Court of Adams county; the Hon. ALBERT AKERS, Judge, presiding.

WALTER H. BENNETT, for appellant.

J. LEROY ADAIR, and WILLIAM SCHLAGENHAUF, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Arthur M. Omer, appellee, filed his bill in chancery on September 19, 1914, in the circuit court of Adams county, against William Vollbracht, appellant, for a partnership set-

tlement and accounting, and this appeal is prosecuted to reverse a decree entered in favor of appellee on that hearing.

Appellant had for some time prior to August, 1907, been engaged in the business of buying and selling grain, produce, machinery, seeds, implements, harness, etc., in the village of Camp Point. Appellee is a brother of appellant's wife and for some time had lived with appellant's family. In 1907 appellant and appellee formed a partnership and established a branch of the business at Barry, Illinois, which was managed and conducted by appellee while appellant remained in charge of the business at Camp Point. Appellee became addicted to the excessive use of intoxicating liquors, which impaired his health and business capacity to some extent. Early in January, 1914, appellant accompanied appellee to Hot Springs, Arkansas, for baths and treatment. At the request of appellee appellant went to Hot Springs on January 21 to accompany appellee home. They arrived in Quincy on January 22 and upon their arrival went to the office of an attorney at law, where appellee executed and delivered to appellant a bill of sale of all of appellee's interest in the partnership property and business in consideration of $2000, the receipt of which was acknowledged in the bill of sale. Appellee also executed and delivered to appellant deeds to some lots in Panama, Oklahoma, and some land in the State of Missouri, none of which was of great value. Appellant and appellee also executed at the same time an agreement whereby it was recited that appellee was about to retire from business; that he had conveyed his interest in the partnership property and business to appellant, who had given his note therefor for $2000, due in five years and bearing interest at the rate of six per cent per annum, and it was agreed that the interest on the said $2000 note should be applied toward taking care of and looking after appellee, and appellant agreed that during the balance of appellee's lifetime he would care for and look after him. At appellee's death appellant was to have all

his property and the $2000 note should then become null
and void. The note executed at the same time provided
for the payment of interest at six per cent, annually, and
further stated that if appellant faithfully performed his con-
tract with appellee to care for him during his lifetime, then
at the death of appellee the note should be void and appel-
lant should not be required to pay the same or any part
thereof. Appellee also at the same time executed a will giv-
ing his property to appellant. In March, 1914, pursuant to
the advice of physicians, appellant took appellee to a private
sanitarium at Jacksonville, Illinois, where he remained about
five weeks, when he was adjudged insane by a commission
in the Morgan county court, from alcoholic hallucinosis, and
committed to the State Asylum for the Insane at Jackson-
ville, where he remained until he was discharged as cured
July 31, 1914.

It is not controverted that the partners had settlements
and accountings with each other of the business each year
except for the year 1913. The bill alleged that there had
been no accounting and settlement of the partnership busi-
ness for that year, and alleged that appellee was insane and
incapable of transacting any business on January 22, 1914;
that he had been insane for some time prior thereto and
continued insane for some time afterwards; that appellant
knew he was insane, and that the bill of sale and deeds exe-
cuted by him January 22, 1914, were void for those reasons.
The bill further alleged appellant had in his possession two
notes belonging to appellee, one for $492 and the other for
about $1300. The bill prayed that the bill of sale and deeds
from appellee to appellant be set aside, that an accounting
be had of the partnership business, and that appellant be
ordered to deliver to appellee said two notes. The answer
of appellant admitted the partnership and its existence until
January 1, 1914; admitted the making of the bill of sale
and deeds by appellee and the agreement entered into be-

tween the parties, but denied every material allegation upon which appellee based his claim for relief.

The cause was referred to the master in chancery to take the proof and report conclusions. After hearing the testimony the master reported the same, together with his conclusions, to the chancellor, before whom a partial hearing was had upon exceptions of appellant to the master's report, and the cause was re-referred to the master to take additional testimony and modify his findings. Exceptions of appellant to the final report of the master were overruled and a decree entered in favor of appellee. The decree finds there had been a settlement of the partnership accounts between the parties every year of the existence of the partnership except for the year 1913, for which year there had been no settlement; that there was due appellee from appellant upon the final accounting of the partnership matters $2920.27, for which amount the court entered a decree against appellant with an order for execution. The bill of sale, the $2000 note executed as the consideration for the bill of sale, the deeds from appellee to appellant and the agreement signed by the parties, all of which were executed January 22, 1914, were declared to be null and void and ordered canceled and set aside. The amount decreed to be due appellee from appellant included the amount due on the two notes appellee charged appellant had in his possession but which belonged to appellee.

There was much evidence taken on both sides upon the question of appellee's alleged insanity at the time the instruments in question were executed, but the decree makes no finding whatever upon that issue. The basis upon which the decree sets aside the transactions entered into between the parties January 22, 1914, is, that appellant "refused to pay to the said complainant [appellee] the principal mentioned in said note, [the $2000 note dated January 22, 1914,] and that the said defendant [appellant] also refused to comply with the instrument in writing in which the said

defendant [appellant] agreed with said complainant [appellee] to support and maintain the said complainant [appellee] for and during his natural lifetime; that the said defendant [appellant] in open court, while the hearing on the exceptions to the master's report was had, refused to comply with said agreement and to pay said principal, as provided in said contract."

Appellant contends the decree cannot be sustained because the bill sought not only a settlement and accounting of the partnership business but also the setting aside of the deeds to the Oklahoma lots and the Missouri land and the delivery to appellee of the two notes, one for $492 and the other for about $1300, which the proof showed were in nowise related to the partnership business, and that the attempt to combine partnership business and business wholly disconnected with the partnership rendered the bill multifarious. It does not appear this objection was made in the trial court and it cannot first be urged here.

The master found appellee for several weeks prior and subsequent to January 22, 1914, was suffering from impaired health and his mind was impaired to such an extent that he was not capable of transacting ordinary business, and recommended the transaction between the parties on that date be set aside for that reason. The testimony heard before the master on that issue was highly conflicting, but we deem it unnecessary to comment upon it or further refer to it, as the decree, in our view, must be reversed on other grounds not dependent upon the weight and sufficiency of the proof on that issue. We must assume the chancellor was unwilling, under the evidence, to find the allegations of the bill that appellee was insane January 22, 1914, were sustained. If appellee was of sound mind at that time the transaction was a settlement of the partnership affairs between the parties. Part of the consideration for the settlement was the agreement of appellant to care for appellee the remainder of his life, apply the interest on the $2000

note to that purpose, and at the death of appellee, if appellant had faithfully performed the agreement, the note should be void and appellant should not be required to pay it or any part of it. In the absence of any finding by the chancellor that appellee was insane January 22, 1914, it will be presumed he was sane.

There was no allegation or proof of fraud or misrepresentation. From the recitals of the decree it appeared the chancellor considered appellee as sane but set aside the transaction and agreement entered into January 22, 1914, because appellant refused to carry out the provisions of the agreement to take care of appellee during the remainder of his life. We think the action of the chancellor erroneous, and if appellant refused to carry out the provisions of the agreement that is not sufficient to justify the decree entered. If the parties were competent to transact business at the time they entered into the partnership settlement, January 22, 1914,—and the decree does not find they were not,—the question of an accounting of their business for the year 1913 is removed. They had a right to settle it as they saw fit. If either party fails to carry out the provisions of the agreement that is another matter, calling for different relief.

This action was brought before the first payment of annual interest was due on the note. There were no allegations in the bill that appellant had in any respect failed or refused to comply with the agreement of January 22, 1914. Appellee did not predicate his right to relief on the claim that appellant had failed to perform the agreement. No failure to perform is alleged, and it is apparent from the testimony that was not an issue in the case, although appellant testified he had paid out on account of appellee, before the hearing, more than the amount of the note, specifying to whom the payments were made, for what purpose and when paid. Even if appellee had asked relief on the ground that appellant had refused to perform his agreement, we do not see how on that theory he was authorized to recover a

281 — 13

money decree for the amount of $2920.27 in this action. If the parties were, as we must assume, competent to contract, the transaction was valid and binding upon both, and the failure of appellant to perform on his part would not authorize the setting aside of the agreement, bill of sale, deeds ånd note and an accounting of the partnership, the same as if the transactions of January 22, 1914, had never occurred. The parties are to be held to perform their legal obligations or answer for their failure to do so in an appropriate form of action.

The decree of the circuit court is reversed and the cause remanded.                *Reversed and remanded.*